# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

JOSE CARLOS VELEZ-COLON

     Plaintiff

               v.

CARIBBEAN PRODUCE EXCHANGE, INC.

     Defendants

**Civil No. 08-1607 (SEC)**

## OPINION and ORDER

Pending before this Court are Caribbean Produce Exchange, Inc.'s ("CPE") Motion for Summary Judgment (Docket # 7), and accompanying Statement of Uncontested Material Facts ("SUMF") (Docket # 23), José Carlos Vélez-Colon's ("Vélez") opposition thereto (Dockets ## 8, 13 & 31-2), and CPE's Reply (Dockets ## 9-2 & 58). Also pending is Vélez's Motion for Summary Judgment (Docket # 29), which CPE opposed (Docket # 57).  After reviewing the filings, and the applicable law, CPE's motion is **GRANTED,** and Vélez's motion is **DENIED.**

### Factual and Procedural Background

On May 30, 2008, Vélez, President of Hidrocultivos, J.C., Corp. ("Hidrocultivos"), filed suit against CPE under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681. According to Vélez, CPE obtained his credit report, under false pretenses and without a permissible purpose under FCRA. On July 18, 2008, CPE filed a motion to dismiss. This Court subsequently granted CPE's request to convert the same to a motion for summary judgment. See Dockets ## 12 & 21. Therein, CPE argues that Vélez's credit report is not a "consumer report" as defined by the FCRA, and as a result, this Court lacks subject-matter jurisdiction. In the alternative, CPE alleges that even if said report were covered by the FCRA, it was furnished due to a "legitimate business need" under Section 1681b(a)(3)(F). Vélez opposed, arguing that his credit report is

a "consumer report" under the FCRA, and argues that CPE did not have a permissible purpose to procure said information. He further contends that CPE obtained his consumer report under false pretenses, and in violation of FCRA.

Thereafter, the parties filed numerous motions regarding procedural issues. Vélez then moved for summary judgment, arguing that CPE obtained his credit report under false pretenses. Vélez also contends that he did not initiate a business transaction under the FCRA "legitimate business need" exception, thus, CPE did not have a permissible purposes to request his consumer report. Pursuant to Vélez's request, and CPE's motion to strike for non-compliance with FED. R. CIV. P. 56, Vélez's motion for summary judgment was stricken from the record. See Dockets ## 31 & 55. However, per this Court's order, Vélez re-filed his Statement of Uncontested Facts. Docket # 29.

On April 24, 2009, Vélez filed an amended complaint, setting forth claims against Guadalberto Rodriguez-Rodriguez, Luis Rodriguez-Rodriguez, and Carmen Ramos, CPE's employees. Docket # 32. Then, on July 6, 2009, he filed a motion for default entry against all defendants, due to their alleged failure to answer the amended complaint. Docket # 47. Shortly thereafter, Guadalberto Rodriguez-Rodriguez, Luis Rodriguez-Rodriguez, and Carmen Ramos filed a motion to dismiss, arguing insufficient service of process under FED. R. CIV. P. 4. Docket # 45.

On July 9, 2009, Vélez filed a notice of voluntary dismissal (Docket # 50), to which CPE opposed (Docket # 49). Pursuant to this Court's orders, on August 10, 2009, CPE filed its opposition to Plaintiff's additional facts, and its opposition to Plaintiff's Statement of Uncontested Facts at Docket # 29. On even date, this Court denied Vélez's notice of voluntary dismissal. Docket # 62.

**Standard of Review**

*FED. R. CIV. P. 56*

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." FED.R.CIV.P. 56(c); See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248(1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005). In reaching such a determination, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994). At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005)(quoting Garside, 895 F.2d at 48 (1st Cir. 1990)); see also SEC v. Ficken, 546 F.3d 45, 51 (1st Cir. 2008).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (quoting from Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). "The non-movant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. . . .Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924

F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence"); Medina-Muñoz, 896 F.2d at 8 (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve."). When filing a motion for summary judgment, both parties must comply with the requirements of Local Rule 56, and file a statement of facts, set forth in numbered paragraphs, and supported by record citations. See Local Rule 56(b). In turn, when confronted with a motion for summary judgment, the opposing party must:

> [s]ubmit with its opposition a separate, short, and concise statement of material facts. The opposition shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation...Local Rule 56(c).

Local Rule 56(e) further provides that "[a]n assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion." Moreover, a "court may disregard any statement of material fact not supported by a specific record citation to record material properly considered on summary judgment." Local Rule 56(e). Local Rule 56(e)(2) further states that, if the opposing party does not respond to a motion for summary judgment, "summary judgment should, if appropriate, be entered against that party." When "a party opposing summary judgment fails to act in accordance with the rigors that such a rule imposes, a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated." Cabán-Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007). These rules "are meant to ease the district court's operose task and to prevent parties from unfairly shifting the burdens of litigation to the court." Id. at 8. The First Circuit has held that when the parties ignore the Local Rule, they do so at their own peril. See Ruiz-Rivera v. Riley, 209 F. 3d 24, 28 (1st Cir. 2000).

**Applicable Law and Analysis**

In the present case, Vélez was granted several opportunities to correct procedural mistakes. Specifically, this Court allowed him to re-file his opposition to CPE's motion for summary judgment, as well as his statement of material facts in support of his request for summary judgment. See Docket # 55. Notwithstanding, Vélez's Statement of Disputed Facts (Docket # 31-2) does not comply with Local Rule 56, which requires that a party opposing a motion for summary judgment admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts. In his opposition, Vélez partially admitted SUMF ¶ 1, which will be discussed shortly. Vélez, however, did not admit, deny or qualify the rest of CPE's SUMF by reference to each numbered paragraph. Instead, Vélez stated that "the rest of the statements are accepted in part, denied in part on the same grounds." Docket # 31-2, p. 3.

Furthermore, Vélez's Statement of Additional Facts is fraught with conclusory allegations, hearsay, and highly speculative assertions of fact. Thus, although as will be discussed below, CPE partially failed to provide specific page and paragraph numbers in its reply to Vélez's additional statements of facts, said facts cannot be considered by this Court. Specifically, in ¶3 and a portion of ¶13, which are exclusively supported by Vélez's sworn statement, and the complaint's allegations, Vélez sets forth what a CPE's "agent" allegedly told him *via* telephone on two separate occasions. Since Rule 56 (e)(1) states that, in opposing summary judgment, an "affidavit must . . . set out facts that would be admissible in evidence...[h]earsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment." <u>SEC v. Ficken</u>, 546 F.3d 45, 53 (1st Cir. 2008) (citing <u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 50 (1st Cir. 1990)). Moreover, Vélez fails to point out hearsay exceptions and exclusions, and accompanying argumentation, that would lead to a different conclusion. <u>Bennett v. Saint-Gobain Corp.</u>, 507 F.3d 23, 28 (1st Cir. 2007).  As a result, this Court will ignore those statements that are based upon hearsay.

Also, ¶¶ 5, 6, 9, 11, and portions of ¶ 8 and 13 are conclusory allegations, and unsupported speculation, since Vélez solely focuses on third-party motivations without

references to evidence on the record. Although courts must evaluate the record in the light most favorable to the non-movant, summary judgment cannot be defeated by relying on conclusory allegations. Rios-Jimenez v. Sec'y of Veterans Affairs, 520 F.3d 31 (1st Cir. 2008) (citing Ingram v. Brink's, Inc., 414 F.3d 222, 228-29 (1st Cir. 2005)).

Moreover, at ¶ 4, Vélez avers that he never requested an extension of credit to CPE, and at ¶ 10, Vélez reiterates that he "is not seeking damages for failure to give notice of credit adverse action precisely because no credit extension was ever requested..." Docket # 31-2, p. 5. However, the record shows that Vélez signed a form titled "Caribbean Produce Application for Commercial Credit,"authorizing "the investigation and the exchange of credit information in regard to [said] application." The application further provides that Vélez, in his personal capacity, would be jointly and severally liable to CPE by reason of products served by credit. As such, Vélez's statements of fact ¶¶ 4 and 10 contradict the evidence on the record, as well as his admission regarding the veracity of the application.[1] See Docket # 31-2, page 1. Therefore, ¶ 4 will be disregarded by this Court.

At ¶ 12, Vélez states that he received at least two phone calls from CPE's "agent," who identified himself as Luis Rodriguez. Notwithstanding, on August 14, 2009, Vélez filed a motion informing this Court that he had mistakenly stated that Luis Rodriguez had called him, and later, after reviewing his note-pad, realized that it had been Guadalberto Rodriguez-Rodriguez. Docket # 59. This Court notes that prior to filing said motion, Vélez at all times referred to Luis Rodriguez as the caller, including in the accompanying sworn statement. In light of the foregoing, this Court finds that Vélez's statements on this front are contradictory, and shall be disregarded upon ruling on the instant motion.

Lastly, in its reply to Velez's additional facts (Docket # 31), CPE provides the sworn statements of Maria Candelas, CPE's comptroller, and Carmen Ramos, CPE's sales manager.

---

[1] Although Vélez contests that his social security number was never included in the application, he does not dispute the rest of its contents, and admits that he signed the application.

**Civil No. 08-1607 (SEC)**                                                                   **7**

Since Candelas' sworn statement is three pages long, and CPE failed to provide the page numbers in support of each reply statement of fact, this Court cannot consider those facts supported by Candelas' affidavit, in ruling upon this motion. Nevertheless, considering that Ramos' sworn statement consists of a single page, those reply statements of fact supported by her declaration, and which are not properly rebutted by Vélez, are deemed admitted.

Based on the foregoing, the uncontested facts are as follows: Plaintiff is an individual. Docket # 29, ¶ 2. Trans Union is a consumer reporting agency. Docket # 29, ¶ 3. On May 24, 2007, Vélez signed a form, in the Spanish language, titled "Caribbean Produce Application for Commercial Credit." SUMF at ¶ 1; Docket # 29, ¶ 1. In a section labeled "Name of Business or Applicant", Vélez wrote "Hidrocultivos J.C. Corp." Id. at ¶ 2. Moreover, under a heading titled "Persons authorized to negotiate merchandise with charges to us", Vélez printed his name. Id. at ¶ 3. Below Vélez's name, and above his signature, the following text appears:

> I affirm that the previous answers are true and correct. I authorize the investigation and the exchange of credit information in regard to this application. I agree that this application is and will remain as your property, the credit requested, be or not approved. If the credit applied for is approved, this application will constitute a continuing and irrevocable guaranty contract. The undersigned will agree in his/her/their personal capacity to pay jointly and severally what is owed to Caribbean Produce Exchange, Inc. by reason of products served by credit under the terms of this contract. We understand that any product served by credit to the applicant by Caribbean Produce Exchange, Inc. will be protected by the dispositions of the Perishable Agricultural Commodities Act (PACA) and that it must paid no later than the terms established herein. In case of a legal claim the undersigned will submit to the jurisdiction and control of the Courts in San Juan and we agree to cover the costs, expenses and disbursements caused by the claim, and also attorney fees in an amount not lower than twenty (20) percent of the original principal of this claim with the mere filing of the complaint. In case of selling the business, you must notify said transaction at least twelve (12) days before in writing returned receipt requested, otherwise you will continue being responsible for the credit granted herein (Law 60).

Id. at ¶ 4. The Form is signed and dated by Vélez on May 24, 2007. Id. at ¶ 5. His signature appears on the section labeled "Signature of Applicant." Id. at ¶ 6. In order to speed up the commercial credit application, which required the applicant's information and social security number, Vélez provided his social security number to Ramos *via* telephone, who in turn gave

it to Candelas, CPE's comptroller. Docket # 58, ¶¶ 4-6.[2]

On or around May 25, 2007, Trans Union furnished some information to CPE regarding Vélez. Docket # 29, ¶ 4. On even date, CPE certified to Trans Union that the request for Vélez's information was a "customer initiated transaction." Docket # 29, ¶ 6. CPE did not certify to Trans Union that it would use Vélez's consumer report for purposes of credit, employment, or insurance purposes. Docket # 29, ¶ 7. Later on, Vélez voluntarily discontinued the credit application process. Docket # 58, ¶¶ 8 & 10.

In its motion for summary judgment, CPE argues that Vélez's credit report is not a "consumer report" as defined by the FCRA. In support thereof, CPE points out that a "consumer report" is defined as certain information furnished by a consumer reporting agency bearing on a consumer's credit worthiness, "which is used for the sole purpose of serving as a factor in establishing the consumer's eligibility for...*credit or insurance purposes, employment purposes, or any other purpose authorized under section 1681b* of this title." 15 U.S.C. § 1681a (emphasis provided). According to CPE, reports utilized for business, commercial, or professional purposes are not covered by FCRA, and Vélez's credit report was obtained solely to establish his business' credit eligibility. As such, CPE argues that insofar as Vélez's report was not obtained for personal, family, or household purposes, nor one of the permissible purposes under Section 1681b, it is not a "consumer report" under the FCRA, and as a result, said statute is inapplicable to the case at bar.

In the alternative, CPE alleges that even if said report were covered by the FCRA, it was obtained due to a "legitimate business need," under Section 1981b(a)(3)(F). Specifically, CPE notes that Section 1681b(a)(3)(F)(i) provides that a consumer reporting agency may furnish a consumer report to a person which it has reason to believe has a legitimate business need for the information, in connection with a business transaction that is initiated by the consumer. CPE

---

[2]  Since Vélez did not file an opposition to CPE's reply statements, after reviewing the same, this Court finds that these facts are uncontested.

contends that Vélez's report was obtained for legitimate business reasons, and in connection with a business transaction that was initiated by the consumer. As such, CPE argues that it had a permissible purpose to obtain Vélez's credit report.

In opposition, Vélez avers that the credit application was made on behalf of Hidrocultivos, not in his individual capacity. He further argues that CPE had no permissible purpose under FRCA to obtain his credit report. Specifically, Vélez posits that CPE obtained his credit report pursuant to Section 1681b(a)(3)(F)'s business needs exception, without informing the customer reporting agency the true use or purpose of said information. According to Vélez, "the information collected by the credit reporting agency was collected in whole or in part for the purpose of serving as a factor in establishing Plaintiff's eligibility for credit, but not for business purposes." Docket # 8, p. 3. According to Vélez, the information collected by CPE is a "consumer report" under the FRCA, which was obtained under false pretenses. Vélez further contends that he never provided his social security number to CPE or its employees, thus any inquiry into his credit report was unauthorized.

After reviewing the record, this Court first notes that Vélez's social security number does not appear in the Spanish language copy of the commercial credit application. Notwithstanding, in its reply statements, CPE argued that Vélez failed to provide the same, and as a result, Ramos, CPE's General Manager, called Vélez to request said information in order to speed up the application process, and Vélez voluntarily provided his social security number. See Docket # 58, ¶¶ 4-6; Docket # 58-3, Ramos' Sworn Statement. Since Vélez did not provide any statement or evidence to rebut Ramos' declaration, the proposed reply statements are deemed uncontested for purposes of this motion. As a result, this Court finds that Vélez voluntarily provided his social security to CPE in order to speed up, and complete the commercial credit application, despite the fact that he later discontinued the application process.

Thus, this Court must now determine whether Vélez's credit report is a "consumer report" pursuant to the FCRA.

*"Consumer Report"*

Congress enacted the FCRA in 1970 as part of the Consumer Credit Protection Act "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Sullivan v. Greenwood Credit Union, 520 F.3d 70, 73 (1st Cir. 2008) (citing Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007)). In so doing, "FCRA regulates access to individuals' "consumer reports" Dixon v. Shamrock Fin. Corp., 522 F.3d 76, 77 (1st Cir. 2008). Pursuant to FRCA, "[a]n entity may gain access to an individual's consumer report only with the written consent of the individual, unless the consumer report is to be used for certain 'permissible purposes,' in which case written consent is not required." Id.; see 15 U.S.C. §§1681b(a)(2) and (3).

FCRA defines a "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used for the sole purpose of serving as a factor in establishing the consumer's eligibility for...*credit or insurance purposes, employment purposes, or any other purpose authorized under section 1681b* of this title." 15 U.S.C. § 1681a (emphasis provided). Accordingly, courts have held that "[i]f the information was used or expected to be used to assess an individual's eligibility for personal credit, insurance, or employment, then the information constitutes a 'consumer report,' and is governed by FCRA." Zeller v. Samia, 758 F. Supp. 775,  780 (D. Mass 1991) (citing Ippolito, 864 F.2d at 449.

Section 1681b, commonly referred to as a "catch-all provision", sets forth the only permissible purposes under which a consumer reporting agency may furnish a consumer report. It provides, in pertinent part, that:

> any consumer reporting agency may furnish a consumer report under the following circumstances and no other:
> ....
> (2) In accordance with the written instructions of the consumer to whom it relates.
> (3) To a person which it has reason to believe-
> ...
> (F) otherwise has a legitimate business need for the information-
> (i) in connection with a business transaction that is initiated

by the consumer; or
(ii) to review an account to determine whether the consumer
continues to meet the terms of the account.

Prior to 1996, Section 1681b(3)(E) read "a consumer reporting agency may furnish a consumer report under the following circumstances and no other: ... " (3) [t]o a person which it has reason to believe ... (E) otherwise has a legitimate business need for the information in connection with a business transaction *involving the consumer*." (Emphasis provided). Section 1681b was amended in 1996, and the "business need" exception was renumbered as Section1681b(a)(3)(F). As previously mentioned, said subsection now provides that a party may obtain a report if it "otherwise has a legitimate business need for the information-- (i) in connection with a business transaction that is *initiated by the consumer*..." See Bakker v. McKinnon, 152 F.3d 1007, 1011 (8th Cir. 1998).  Courts have held that "[t]he terms 'legitimate business need' and 'in connection with' refer to the needs and objectives of the individual to whom the report is furnished, not the needs of the person about whom the report is furnished." Zeller, 758 F. Supp. at 782 (citing Fernandez v. Retail Credit Co., 349 F. Supp. 652, 654-55 (E.D.La. 1972)).[3]

Courts have differed regarding the factors to be considered in determining whether credit information constitutes a "consumer report" under FCRA. In Bakker, 152 F.3d at 1012, the court held that determining "whether a credit report is a consumer report does not depend solely upon the ultimate use to which the information contained therein is put, but instead, it is governed by the purpose for which the information was originally collected in whole or in part by the consumer reporting agency." Thus the Eighth Circuit concluded that regardless of the intended use of the credit reports, they will be considered consumer reports within the meaning of the FCRA if the information contained therein was collected for a consumer purpose, *i.e.*, credit or insurance purposes, employment purposes, or any other purpose authorized under

---

[3] Vélez argues that cases decided prior to the 1996 amendments are null. However, the cases herein cited have been reiterated by courts after said amendments, and remain prevalent case law.

section 1681b. Id.  As a result, "even if a report is used or expected to be used for a non-consumer purpose, it may still fall within the definition of a consumer report if it contains information that was originally collected by a consumer reporting agency with the expectation that it would be used for a consumer purpose." Id. (citing Ippolito, 864 F.2d at 453). Zeller, 758 F. Supp. at 780, adopted this view, holding that "if the user of a report led the reporting agency to believe that the report would be used for a permissible purpose under the Act, then the report is a 'consumer report,' and the ultimate use to which the report is actually put is irrelevant to the question of whether the FCRA governs the report's use and the user's conduct." Thus "if the information was collected for one of the purposes under the Act, it is a 'consumer report' regardless of the purpose which the report is subsequently used." Id.

However, Ippolito, 864 F.2d at 449-50 n.10, also warns that "because of the circular definition of 'consumer report,' [section] 1681b's limitations on the dissemination of consumer reports are essentially rendered meaningless if the sole determination of whether a report is a consumer report is made solely by looking at the reason for which the report is requested." See also Yang v. Government Emples. Ins. Co., 146 F.3d 1320, 1325 (11th Cir. 1998). The court further noted that albeit the plain language of the statute, "'used or expected to be used or collected in whole or in part' requires an inquiry into the reasons why the report was requested and why the information contained in the report was collected or expected to be used by the consumer reporting agency," an inquiry regarding the use of the report is also needed. Ippolito, 864 F.2d at 449-50 n.10. Otherwise, consumer reporting agencies will provide consumer reports when a person requests the same for a purpose set forth in Section 1681b, as well as when a report is not under one of the permissible purposes because it is not covered by the FCRA.

Moreover, although courts have held that information used or expected to be used to assess an individual's eligibility for personal credit, insurance, or employment, is a consumer report under FCRA, Zeller, 758 F. Supp. at 780 (citing Ippolito, 864 F.2d at 449), it is also well established that "[r]eports issued for commercial, business or professional purposes are outside the scope of the Act." Id. (citing Ippolito, 864 F.2d at 452). Ippolito recognized that "Congress

sought to regulate the dissemination of information used for consumer purposes, not business purposes." Since FCRA is designed to protect consumers only in their individual capacities, where a corporate plaintiff applies for credit for a commercial purpose, the plaintiff is not a member of the class the Act was intended to benefit. Id. Similarly, courts have found that credit reports obtained in connection with applications for commercial credit are not "consumer reports" under FCRA. Matthews v. Worthen, 741 F.2d 217, 218 (8th Cir. 1984); Ley v. Boron Oil, 419 F. Supp. 1240, 1243 (noting that FCRA regulates the reporting of credit matters involving individuals as consumers, and was not meant to cover business credit reports pertaining to the business activities of the person reported on); Sizemore v. Bambi Leasing Corp., 360 F. Supp. 252, 254 (N.D.Ga.1973) (holding that the use of a credit report in connection with a lease application for business purposes, *i.e.*, an application for commercial credit, falls outside the protection afforded by FCRA).

*Civil Liability under FRCA*

FCRA provides a private right of action against businesses that use consumer reports but fail to comply with its provisions. Safeco, 551 U.S. at 53. Accordingly, "[i]f a violation is negligent, the affected consumer is entitled to actual damages... [i]f willful [or reckless], however, the consumer may have actual damages, or statutory damages ranging from $100 to $1,000, and even punitive damages." Id. Section 1681n(a) provides that "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer..." may be held liable to that consumer for actual damages or damages of not less than $100 and not more than $1,000. Under the FCRA, to constitute willful noncompliance under Section 1681n, a party must have "knowingly and intentionally committed an act in conscious disregard for the rights of others." Stevenson v. TRW, Inc., 987 F.2d 288, 293 (5th Cir. 1993); Richardson v. Fleet Bank, 190 F. Supp.2d 81, 89 (D. Mass. 2001).

Nevertheless, if the offender is liable "for obtaining a consumer report under false pretenses or knowingly without a permissible purpose," actual damages or $1,000 may be imposed. Safeco, 551 U.S. 47 at 59. Section 1681q of FCRA provides "[a]ny person who

knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined not more than $5,000 or imprisoned not more than one year, or both."[4] To determine whether a request for a consumer report has been made under "false pretenses", courts must look at the permissible purposes for which consumer reports may be obtained under 15 U.S.C. § 1681b of the FCRA. Veno v. AT&T Corp., 297 F. Supp. 2d 379, 385 (D. Mass. 2003) (citing Graziano v. TRW, Inc., 877 F. Supp. 53, 57 (D. Mass. 1995). Thus "[i]f a user requests information from a consumer reporting agency for a purpose not permitted by section 1681b, while representing to the agency that the report will be used for a permissible purpose, the user may be liable for obtaining information under false pretenses under section 1681q." Zeller, 758 F. Supp. at 781.

In the present case, per Vélez's own admission, CPE did not certify that his report would be used for credit, insurance, or employment purposes. Docket # 29, ¶ 7. As such, the report in question can only be deemed a "consumer report" if it was obtained under one of Section 1681b's permissible purposes. Pursuant to the uncontested facts, Vélez filled out an application for commercial credit, on behalf on Hidrocultivos. The application form, signed by Vélez, expressly provided that he "authorize[d] the investigation and the exchange of credit information in regard[s] to [the] application..." Moreover, the application states that if credit were approved, Vélez would be jointly and severally liable for any amounts owed to CPE by reason of products served by credit under the terms of the contract. Insofar as Vélez authorized the credit investigation *via* the signed commercial credit application form, for the sole purpose of obtaining credit for Hidrocultivos, and access to CPE's services, the report obtained by CPE is outside the scope of FCRA. As previously stated, "[r]eports issued for commercial, business or professional purposes are outside the scope of the Act." Zeller, 758 F. Supp. at 780 (citing Ippolito, 864 F.2d at 452). Accordingly, credit reports obtained in connection with applications for commercial credit are not "consumer reports" under FCRA. Ley v. Boron Oil, 419 F. Supp.

---

[4] Section 1681q does not include negligent violations. Graziano, 877 F. Supp at 56.

at 1243. Here, Vélez sought credit for a commercial purpose. Therefore, he is not a member of the class FCRA was intended to benefit. <u>Zeller</u>, 758 F. Supp. at 780  (citing <u>Ippolito</u>, 864 F.2d at 452). This follows Congress' purpose to regulate the dissemination of information used for consumer purposes, not business purposes.

Vélez argues that the wording "customer initiated transaction" shows that CPE admittedly requested a consumer report under Section 1681b(a)(3)(F), but later used said information for other purposes, in violation of FCRA. Based on the foregoing, Vélez argues that his credit report was obtained under false pretenses.  Even assuming that the credit report was a "consumer report" covered by FCRA, Vélez's allegations on this front fail. First, Vélez authorized the inquiry in writing, as such, Section 1681b(a)(2)'s permissible purpose is met.[5] Furthermore, a consumer reporting agency may furnish a credit report to a person it has reason to believe has a "legitimate business need" for the information in connection with a business transaction initiated by the consumer. 15 U.S.C. § 1681b(a)(3)(F)(i). Clearly, Vélez's written request for commercial credit on behalf of Hidrocultivos shows CPE's legitimate business need for the information sought. Thus even assuming that the information sought is a consumer report under the FCRA, it was obtained by CPE for a permissible purpose, *i.e.*, in connection with a business transaction initiated by the consumer. As discussed earlier, a "legitimate business need," refers to the needs and objectives of the individual to whom the report is furnished, in this case CPE, not the needs of the person about whom the report is furnished. <u>Zeller</u>, 758 F. Supp. at 782.

*Supplemental State Law Claims*

Having dismissed Vélez's federal law claims against CPE, his state law claims against CPE are also dismissed. <u>See</u> <u>Newman v. Burgin</u>, 930 F.2d 955, 963 (1st Cir. 1991) (holding that "[t]he power of a federal court to hear and to determine sate-law claims in non-diversity cases

---

[5]  A consumer report may be furnished "in accordance with the written instructions of the consumer to whom it relates."

<u>**Civil No. 08-1607 (SEC)**</u>                                                                                  **16**

depends upon the presence of at least one 'substantial' federal claim in the lawsuit.")

**Conclusion**

Based on the foregoing, CPE's motion for summary judgment is **GRANTED,** and Vélez's motion for summary judgment is **DENIED**. The instant case is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 8th day of December, 2009.

                                        *S/Salvador E. Casellas*
                                        Salvador E. Casellas
                                        U.S. District Judge